**302·15**

No. 08-12-00300-CR

ORIGINAL

COURT OF CRIMINAL APPEALS

AUSTIN TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 23 2015

Abel Acosta, Clerk

ROBERT CARVER

VS.

STATE OF TEXAS

On Appeal From 362ND DISTRICT COURT

Denton County, Texas

Cause No.'s F-2010-1715-D, F-2010-1716-D, F-2010-2243-D

## PETITION FOR DISCRETIONARY REVIEW

ROBERT CARVER, Pro Se

TDCJ-ID #1830004

Gurney Unit

1385 FM 3328

Palestine, Texas 75803

FILED IN
COURT OF CRIMINAL APPEALS

MAR 23 2015

Abel Acosta, Clerk

ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

Appellant: Robert Carver

Appellant's Counsel at Trial: Patty A. Tress
State Bar No. 24048679
1005 North Elm St.
Denton, Texas 76201
Telephone: (972)325-1758
Fax: (972) 869-0003

Appellant's Counsel on Appeal: Robert Carver, pro se, TDCJ-ID#1830004
Gurney Unit
1385 FM 3328
Palestine, Tx 75803

Appellee: State of Texas      Judge: Robert Bruce McFarling

Appellee's Counsel at Trial:      On Appeal:
Matthew Shovlin                   Charles Orbison
State Bar No. 24002940            State Bar No. 24009335
1450 E. McKinney, Third FL.       1450 E. McKinney, Third FL
Denton, Texas 76209              Denton, Texas 76209
Telephone: (940)349-2600         Telephone: (940)349-2600
Fax: (940)349-2601               Fax: (940)349-2601

i

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . iv

STATEMENT REGARDING ORAL ARGUMENT . . . . . . vi

STATEMENT OF THE CASE . . . . . . . . . . vi

STATEMENT OF PROCEDURAL HISTORY . . . . . . . vii

GROUNDS FOR REVIEW . . . . . . . . . . viii

ARGUMENT

    1. Court of Appeals erred in suggesting omission of corroboration charge was harmless, conflicting with applicable Criminal Court of Appeals Decisions. . . . . . . . . . . . . . p.1

        SUMMARY OF THE ARGUMENT . . . . . . . . . p.1

    2. Trial Court erred in failinging to arraign Appellant on two charges p.10

        SUMMARY OF THE ARGUMENT . . . . . . . . p.10

ii

PRAYER FOR RELIEF . . . . . . . . . . . p14

Appendix . . . . . . . . . . . . . . p15

# INDEX OF AUTHORITIES

## Cases

Castaneda v. State,
    682 S.W.2d 535 (Tex.Cr.App. 1984) . . . . . . . . . . . p.5

Cruz v. State,
    690 S.W. 2d 246 (Tex.Cr.App 1985) . . . . . . . . . p.4

Herron v. State,
    86 S.W.3d 621 (Tex.Crim.App. 2003) . . . . . . . . . p.2

Jones v. State,
    195 S.W.3d 279 (Tex. App.-Fort Worth, 2006) . . . . . . p.2

Munoz v. State
    853 S.W.2d 558 (Tex Cr.App 1993) . . . . . . . . . . p.3

Saunders v. State,
    817 S.W.2d 688 (Tex.Cr.App. 1991) . . . . . . . . . . p.3

Taylor v. State,
    7 S.W.3d 732, 737 (Tex.App-Houston [14th Dist.] 1999) . . . . . . . p.2

Walker v. State,
    615 S.W.2d 728 (Tex.Cr.App. 1981) . . . . . . . . . p.4

## Rules

Tex. Discp. Rules Prof. Cond.
     Rule 1.05 (a) . . . . . . . . . . . . . p.13

Tex. Discp. Rules Prof. Cond.
     Rule 1.06 (a) . . . . . . . . . . p.13

Tex. Discp. Rules Prof. Cond.
     Rule 1.09 (a) . . . . . . . . . . p.13

Tex. Discp. Rules Prof. Cond.
     Rule 1.15 (d) . . . . . . . . . . . p.13

Tex. Rule App. Proc.
     Rule 7 . . . . . . . . . . . p.13

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant believes that oral argument may aid the Court's decisional process. The Court of Appeals failed to review any of the reply brief's associated with this appeal, or the brief's associated with Case No.'s 08-12-00299-CR and 08-12-00300-CR, which may have harmed the Appellant in their determination of egregious harm. Also, Appellant was never arraigned on two cause numbers. There was some confusion in who his attorney was during the first six months of his incarceration. The Trial Court denied Appellant court appointed counsel, thus, Appellant was forced to hire an attorney even though he couldn't afford one. Ultimately, the attorney withdrew because Appellant couldn't afford him any longer. It was several months later before the Trial Court gave Appellant appointed counsel. There ended up being a conflict with his retained attorney when he ended up representing an accomplice in this case, the Appellant's wife, against the Appellant. While Appellant was without counsel he had three arraignment settings that were never rescheduled after he acquired counsel.

## STATEMENT OF THE CASE

Except as otherwise noted herein, Appellant adopts the statement of the case and facts in the opinion of the Court of Appeals. (See, 08-12-00300-CR, Opinion, p. 1-4).

vi

# STATEMENT OF PROCEDURAL HISTORY

1. On January 28, 2015, Court of Appeals Affirmed this conviction.

2. On February 9, 2015, Motion for Rehearing was filed.

3. On March 4, 2015, motion for Rehearing was denied.

# GROUNDS FOR REVIEW

## ISSUE NO. 1

1. Court of Appeals erred in suggesting that omission of corroboration charge was harmless, conflicting with applicable Criminal Court of Appeals decisions.

2. An oversight occurred when the Court of Appeals failed to consider the briefs associated with this issue, as well as the reply breif, (08-12-00300-CR, opinion, p.4), as a result, appellant feels a proper harm analysis was not done.

3. Appellant cites several Court of Criminal Appeals cases, which suggested failure to give an accomplice witness charge was egregiously harmful. (08-12-00300-CR, P.D.R. p.3-5).

## ISSUE NO. 2

1. Trial Court erred in failing to arraign Appellant on two charges.

2. Does Appellant have a right to counsel during a critical stage of the trial?

3. Appellant's Sixth Amendment to the United States Constitution, right to counsel was violated, conflicting with State and Federal Law.

# ARGUMENT

## ISSUE NO. 1

COURT OF APPEALS ERRED IN SUGGESTING OMISSION OF CORROBORATION CHARGE WAS HARMLESS, CONFLICTING WITH APPLICABLE CRIMINAL COURT OF APPEALS DECISIONS.

### SUMMARY OF THE ARGUMENT

WHEN THERE IS NO CHANCE THAT A JURY COULD HAVE APPLIED THE LAW OF ACCOMPLICE WITNESS CORRECTLY, IS THE OMISSION OF SUCH A CHARGE HARMLESS?

Appellant argues that the Appellate Court failed to review the brief associated with the case involving the accomplice witness or the reply brief also associated with the accomplice witness instruction. (See, 08-12-00300-CR, opinion, p.4). The Court of Appeals states that Appellant has three appeals pending, but the Appellant only filed a single handwritten brief in these appeals. This is incorrect. Actually the Appellant filed three original handwritten briefs, a separate one for each case, with arguments specific to that case and a handwritten reply brief in each case, all of which were filed on time with the Appellate Court Clerk, Denise Pacheco. (See, Original, Pro se briefs, filed on 9/30/13); (State's brief on 11/22/13); (Reply, Pro se brief's on 12/5/13).

The Court of Appeals cites two cases in their opinion in which the instruction was omitted. In Herron, the omission was harmless

because the non-accomplice evidence consisted of; (1) a confession; (2) Herron's clothes found at the crime scene; (3) stolen property found in his possession; (4) the murder weapon found in his possession; and (5) Herron's fingerprints found on several items within the victims truck. The was no persuasive explanation for Herron's clothes and fingerprints at the scene, or for his possession of stolen property and the murder weapon. For these reasons the error was harmless. Herron v. State, 86 S.W.3d 621 (Tex.Crim.App. 2002). In Jones, the non-accomplice testimony came from two deputies who were eyewitnesses to the crime being committed. Their statements corroborated the accomplice witness testimony. Therefore, the omission of the accomplice witness instruction was harmless. Jones v. State, 195 S.W.3d 279 (Tex.App.-Fort Worth, 2006).

In Taylor, the trial court submitted an erroneous accomplice witness instruction. The Court of Appeals agreed that; (1) it did not inform the jury that Vasquez and Cellar were accomplice witnesses and; (2) it did not instruct the jury that accomplice witnesses cannot corroborate each other. Taylor v. State, 7 S.W.3d 732,737 (Tex.App.-Houston [4th Dist.] 1999).

The Court of Appeals incorrectly cites Saunders in their egregious harm analysis. In Saunders, the most incriminating evidence came from the testimony of an accomplice. Failure to inform the jury that such testimony needs to be corroborated makes it possible for rational jurors to convict even absent corroboration which they find convincing. Saunders is a good strong indication that the good bit of corroboration test the Court uses today "does not" apply in that way, in a case in which the trial court gave no charge at all on the accomplice

witness evidence. Saunders v. State., 817 s.w.2d 688 (Tex.Cr.App 1991).

Appellant suggests that the error in the instant case wasn't giving the wrong kind of charge, it was giving no charge at all. (See, Motion for Rehearing, #21). If the jury had been charged on the law of accomplice as a matter of fact and they apply the law correctly, they will reach the right result, so long as there was sufficient corroborating evidence. But, if there is no charge at all on the law of accomplice witnesses, there is NO chance that they, the jury could have applied the law correctly.

In the instant case, aside from the testimony of the accomplice witness, the state presented testimony from a forensic scientist, nine police officers, neighbor who lived accross the street and a neighbor who lived behind appellant's house. Appellant presented no evidence at the guilt/innocence phase or the punishment phase of the trial. Nine officers testified but only four were present at the scene on June 16, 2010, when Appellant was arrested on the possession charges. Only two out of the four officers who were present at the scene could identify the Appellant in Court. Neither neighbor could identify the Appellant in Court. (See, Motion for Rehearing, #30).

Appellant uses Munoz v. State., 853 s.w.2d 558 (Tex. Cr. App.1993), to argue that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the Appellant with the offense committed and the corroboration is not sufficient if it merely shows the commission of the offense. In Munoz, aside from the testimony of the accomplice witnesses, the state presented testimony from the medical examiner, ten police officers,

the store manager and another sales clerk from the store. Munoz presented no evidence at the guilt/innocence phase of the trial. The evidence corroborates the testimony of the accomplice witness but did not connect Munoz to the commission of the offense. Outside the testimony of the accomplice witness, there is no evidence Munoz was near the scene of the crime and no evidence he was in possession of stolen property. The evidence was insufficient to corroborate the testimony of the accomplice witness.

In Cruz v. State, 690 S.W.2d 246 (Tex.Cr.App. 1985), the state presented non-accomplice testimony proving he was near the scene of the crime with a pistol and rifle sometime prior to the time the complaintant was shot. Cruz, his wife and accomplice disappeared from the area at approximately the same time complaintant was shot. A gift belonging to the complaintant was found in Cruz's vehicle and he was arrested in California. The non-accomplice testimony did not tend to connect Cruz to the offense because the evidence only corroborated extraneous matters and the state never proved the significance of the gift.

In Walker v. State, 615 S.W.2d 728 (Tex.Cr.App. 1981). A policeman was murdered. The testimony of accomplice proved he and Walker were looking for guns to steal on the evening of the offense. The police recovered two .22 caliber rifles from the lake. Walker's fingerprints were recovered from the pick up where the rifles were stolen. Expert testimony failed to positively identify the recovered rifle as the murder weapon. The evidence was insufficient to corroborate the testimony of the accomplice witness.

4

In _Castaneda v. State_, 682 S.W.2d 535 (Tex.Cr.App.1984), the state's case contained a great amount of detailed corroborative evidence which showed the commission of the murders, there is no corroborative evidence which links Castaneda to the crime. Hearsay testimony from one of the investigating officers identified articles of clothing found with blood on them belonging to Castaneda. No evidence was presented showing he was wearing the clothing. The evidence showed that Castaneda lived in the house with his mother and brother and there was no testimony that shows who occupied the bedroom where the bloodstained yellow coat was recovered. The corroborative evidence produced by the state failed to connect Castaneda to the crime.

Appellant suggests the harm analysis used by the Court of Appeals was based on hearsay much like that in Castaneda. The Court incorrectly says that Officer Shelton saw Appellant step out of the Kitchen area and into the hallway. Shelton's testimony was that Appellant was standing in the hallway that leads from the front door through to the Kitchen. (RR5:212). Shelton walked into the Kitchen, with the intent of going out in the alley where the witness Kincaid was, but saw a woman's purse on the floor and what appeared to be chunks of meth in the sink and next to the purse. (See, 08-12-00300-CR, Opinion, p.7). Kincaid was the only one outside in the alley and Officer Shelton found drugs and paraphernalia in the alley where Kincaid was and next to her car. (RR6:29). The Appellate Court goes on to say that shortly after Appellant's arrest, he told Officer Williams that he had used Effexor and Klonopin and he may have washed it down with some

GHB. Appellant claims this is not possible, since Officer Williams was not present at the scene on June 16, 2010. Plus, all alleged drugs were taken from the residence when Appellant signed a consent to search form, on June 16, 2010. No Effexor was found at the scene and the suspected GHB seized from the residence all turned out to be water. Officer Williams wasn't at the scene until June 20, 2010. (See, Motion for Rehearing, #30-46). The Court of Appeals erred in using Officer Lee's hearsay testimony claiming Appellant owned the home but offerred no proof of such. Officer Lee testified that "someone" had been attempting to dispose of the drugs in the kitchen sink. Appellant suggests that it could have been any one of the three people at the scene and most likely it would have been one of the one's who carries a purse. The most damaging hearsay testimony from Officer Lee was when he testified that Appellant admitted he had knowledge of meth in the sink and his fingerprints might be on the baggies. Appellant denies all of this. Officer Lee was wearing a "body mic" which he claims recorded this conversation but could not explain what happened to the recording. When Officer Lee was asked why he didn't get a written statement from Appellant, since he was so freely giving information, he had no explaination. The only reason that Officer Lee and Barrett could identify Appellant in Court was because they met with him at the jail on another occasion trying to get him to be a confidential informant.

Appellant signed a consent to search form, which was also signed by Officer Lee. Officer Lee filled out the property/

6

evidence report at the scene, labeling and tagging all the items seized at the scene, and the lab request form, listing what needs to be tested and what he suspected each item number to be. The only item number Officer Lee did not tag, was item number two, which was tagged by Officer Shelton. Item two was the drugs found in the alley and next to Kincaids car. Appellant claims the evidence was tampered with. Every item on the property/evidence report and the lab request form that was suspected of being GHB, turned out to be water and showed No controlled substance found. Lee handed off the evidence to Bill Hines, an officer in the property room at the Lewisville Police Department. Bill Hines was fired for misappropriation of evidence. Bill Hines handed off the evidence to A. Tisdale at the lab to be tested. Three items came back from the lab as being GHB. However, none of these items are on the property/evidence report or the lab request form. One of the items shown to be GHB, (#13), was listed on the evidence report as a blue pill and went into the lab as a blue pill, but came out of the lab as 104.67 grams of liquid GHB. The other two items on the evidence report alleged to be GHB, (#15), was listed on the evidence report as thirteen and one-half red pills and went into the lab as thirteen and one-half red pills but came out of the lab as -(#15B) 33.30 grams of liquid GHB and (#15D) 478 grams of liquid GHB. Item numbers seventeen through twenty-two are not on the lab report at all. (See State's exhibit 52). Item numbers twenty-one and twenty two were photo's taken at the scene that Appellant tried to have added to the

appellate record. No other mistakes were made on the evidence report except those pertaining to GHB. Appellant tried through several motions to have these reports made part of the record. They are all part of the State's case file. Appellant strongly feels that had they been made part of the appellate record, the possession charges would not stand.

Appellant suggests that the Court of Appeals incorrectly stated things in their factual summary that could point towards egregious harm. For example, the Court of Appeals claims Kinser was unaware Appellant had bonded out and was at home on June 20, 2010. Kinser testified that on June 17, 2010, she convinced Appellant to let her go pick up the protective order at the police station. (RR5:82-83). Appellant was arrested on June 16, 2010 and bonded out and went home on June 17, 2010. Officer Eledge testified that Kinser picked up the protective order on June 20, 2010. (RR6:169). The Court says Kinser was locked in a bedroom. However, Officer Bennett and Shelton both testified that Kinser never mentioned being locked in a bedroom. (RR6:44);(RR6:74-75). The Court mentions Kinser deadbolting Appellant in the garage and running out of the house, running to a neighbors house, knocking on the door, asking the neighbor for help, but the neighbor refusing and closing the door in her face. This contradicts the testimony from Peggy Romo, who said she saw a woman who looked like the lady across the street run out of the house and a man was right behind her. (RR5:31) Peggy Romo was unable to identify the man chasing Kinser as the Appellant who lived across the street from her. (RR5:36). Appellant claims that there was

8

another person at the scene who was the person running behind Kinser. His name was Chris Coffman. He was at the scene and gave a statement to the police but did not show up at the trial to testify. In his statement he says he was running down the street with Kinser, while calling 911. Chris Coffman was the same height, weight, age, as Appellant and had the same hair color and wore his hair the same length as Appellant. Kinser testified that Appellant never ran after her. (RRS:94); (RRS:159). The person Peggy Romo saw run after Kinser was Chris Coffman, which would explain why Appellant never caught her while he was allegedly chasing her. If he were right behind her he would have caught her when she stopped at a neighbor's house, knocked on their door, had a conversation with them, if this actually happened. The police would have gotten a statement from this neighbor, like they did the others who witnessed something and the prosecution would have subpoenaed them as well. None of this happened because this particular neighbor didn't exist. (08-12-00300-CR, Opinion, p.3).

Appellant claims other statements made favor a finding pointing towards egregious harm. Kinser claimed she had just showered and was naked when police arrived on June 16, 2010. (RRS:123). Officers Shelton, Bennett & Barrett, three of the four officers at the scene, testified that Kinser was clothed the entire time. (RR6:38); (RR6: 74-75); (RR6:126). Officer Shelton said her hair was dry. (RR6:55). State's exhibits 12 & 13, shows Kinser's hair completely dry and unwashed, pulled back. Kinser testified that she had no transportation and did not own a car. (RRS:125). Officer Shelton describes the car parked on the right in the garage, (State's exhibit 38), as being registered to Kinser. Appellant claims that

9

"if you eliminate Kinser's testimony, the non-accomplice testimony would support a egregious harm finding. There were no eyewitnesses to the crime other than the accomplices and the most damaging evidence was Officer Lee's hearsay testimony.

The Court of Appeals erred in not reviewing Appellant's Almanza harm analysis in his accompanying briefs. (See, 08-12-00298-CR, Reply brief, p.6-9); (08-12-00299-CR, Reply brief, p.7-15); (08-12-00300-CR, Reply brief, p.1-4). For these reasons, Appellant suggests the omission of the corroboration instruction to be extremely harmful, resulting in egregious harm. Appellant requests a reversal and remand for another trial.

## ISSUE NO. 2

TRIAL COURT ERRED IN FAILING TO ARRAIGN APPELLANT ON TWO CHARGES.

## SUMMARY OF THE ARGUMENT

DOES APPELLANT HAVE A RIGHT TO COUNSEL DURING A CRITICAL STAGE OF THE TRIAL?

The Court of Appeals incorrectly concluded that the record does not support Appellant's claim that his right to counsel was violated. The Court suggests that Appellant was represented by counsel from July 23, 2010 through November 17, 2011, when the court granted counsel's motion to withdraw. This is incorrect. Appellant claims

10

he was without Counsel from October 1, 2010 thru December 16, 2010 and the record will support his claim. (See, 08-12-00298-CR, brief, p. 49-50); (08-12-00298-CR, Reply brief, p. 24-25).

On June 23, 2010, Appellant submitted an application for Court Appointed Counsel, which was denied. On July 22, 2010, Appellant hired Stephen Wohr. (See, Contract/Receipt). On July 30, 2010, Appellant fired Stephen Wohr. (See, Refund Agreement). In August of 2010, Appellant hired Douglas Mulder. During the first week of October 2010, Mulder withdrew as Appellant's attorney by never showing up again. (See, Attorney Visitation Logs). From October 1, 2010 to December 16, 2010, Appellant was without legal representation. Appellant had an arraignment setting in cause numbers F-2010-1714-D, F-2010-1715-D, F-2010-1716-D on September 2, 2010. His attorney, Mulder, signed a pass-slip, waiving arraignment on these causes. On September 2, 2010, Appellant was indicted on cause number F-2010-2019-D and on September 23, 2010, he was indicted on cause number F-2010-2243-D. The following arraignment settings were set regarding these two cause numbers. (October 7, 2010; October 21, 2010; November 18, 2010). No other arraignment settings were ever scheduled. No pass-slips were signed regarding these cause numbers. On December 15, 2010, Appellant applied for Court appointed counsel again. The court granted Appellant's application and appointed Henry Paine to represent Appellant on December 16, 2010. Henry Paine represented Appellant until November 17, 2011, when he withdrew from representation. Appellant was again without representation from November 17, 2011 to February 14, 2012. On February 14, 2012, Patty Morris Tress was appointed to represent Appellant.

11

The Court of Appeals incorrectly suggests that because Appellant was acquitted of cause F-2010-2019-D, it does not need to be considered as a charge he was without representation on during arraignment. Appellant contends its crucial because had he been able to face the jury with two fewer causes, the outcome in his trial may have been different. (See, Motion for Rehearing, #98).

Appellant claims that his trial suffered because of a conflict of interest that occurred from Doug Mulders representation. Mulder represented Appellant from August 2010 until October 1, 2010. (RRS:129). During that time he met with Appellant on at least two occassions to discuss their strategy. After their meeting it was decided that it would be best to waive arraignment on cause numbers F-2010-1714-D, F-2010-1715-D, F-2010-1716-D. On another occassion, his son Chris Mulder, also an attorney in his firm, visited Appellant to discuss the case. (See, Attorney Visitation Logs).

Appellant's wife, Kinser was the person who recommended Appellant should retain Mulder. During the time of Mulder's representation Kinser was not cooperating with the state. She was visiting Appellant regularly at the jail and putting money on his books and writing. Kinser communicated with Mulder about the case regularly. Then, in January of 2011, Kinser was indicted on one of the possession charges that Appellant was also indicted on, making her an accomplice as well as the alleged victim in Appellant's case. Kinser was arrested in February of 2011, on the possession charge, posted bond a few days later. She failed to appear for court and a warrant was issued for her arrest. During the summer of 2011, Kinser was arrested

12.

for shoplifting, arrested and detained until she ultamitely went to prison. Appellant did not communicate with Kinser from the time she bonded out until she was incustody again. Kinser ended up contacting Mulder trying to get a refund of the money Appellant paid him to retain his services. Mulder told Kinser the retainer was non-refundable. However, Mulder agreed to represent Kinser on the possession charge as well as the theft charge, for the retainer fee already paid by the Appellant. Appellant and Kinser began communicating again while she was in custody. Mulder ended up getting Kinser a two year deal on all her charges, in exchange, she had to cooperate with the State and testify against the Appellant.

Appellant argues that Mulder used their original strategy to cut a deal for Kinser. It was only then that Kinser decided to change her story and testify against the Appellant. Mulder basically switched sides during the same prosecution.

Appellant contends that Mulder violated Tex. Discp. Rules of Prof. Cond. rules 1.05 (a), 1.06 (a), 1.09 (a) by accepting Kinser's representation. Mulder, also never formally withdrew. Before withdrawing, counsel should have filed a motion to withdraw and given Appellant a copy of such a motion. (See, Tex. R. App. Proc. 7). On October 21, 2011, Mulder mailed Appellant his case file, to the Denton County Jail, per, Tex. Discp. Rules Prof. Cond, rule 1.15 (d).

Appellant suggests that by the time the trial court assigned appointed counsel, three arraignment settings had passed and the court overlooked the fact Appellant was never arraigned on two charges. Therefore, Appellant requests an acquittal or at least a new trial.

13

## PRAYER FOR RELIEF

For all the reasons stated in this Petition, Appellant respectfully prays that this Court set aside the conviction and sentence, herein, and order an acquittal, or in the alternative a new trial. Appellant further prays that he may have such other and further relief to which he may be just entitled.

*Robert Carver*

Robert Carver, Pro se

1385 FM 3328

Palestine, Texas 75803

TDCJ-ID # 1830004

## CERTIFICATE OF DELIVERY

I, Robert Carver, certify that a true and correct copy of the Appellant's Petition for Discretionary Review was delivered by mail to Court of Criminal Appeals, Supreme Court Bldg., 201 W. 14th St. Rm. 106, P.O. Box 12308, Austin Texas, 78711-2308, on this 17 day of March, 2015.

*Robert Carver*

14



## COURT OF APPEALS
## EIGHTH DISTRICT OF TEXAS
## EL PASO, TEXAS

| | | |
|---|---|---|
| ROBERT CARVER, | § | No. 08-12-00300-CR |
| Appellant, | § | Appeal from |
| v. | § | 362nd District Court |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC # F-2010-2243-D) |

## J U D G M E N T

The Court has considered this cause on the record and concludes there was no error in the judgment. We therefore affirm the judgment of the court below. This decision shall be certified below for observance.

IT IS SO ORDERED THIS 28TH DAY OF JANUARY, 2015.

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)



COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ROBERT CARVER, | § | No. 08-12-00300-CR |
| Appellant, | § | Appeal from |
| v. | § | 362nd District Court |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC # F-2010-2243-D) |

## O R D E R

The Appellant's motion for rehearing, having been duly considered, is denied.

Accordingly, it is ORDERED that said motion be and it is hereby denied.

IT IS SO ORDERED THIS 4TH DAY OF MARCH, 2015.

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

16


| ROBERT CARVER, | § | No. 08-12-00300-CR |
| | | |
| Appellant, | § | Appeal from |
| | | |
| v. | § | 362nd District Court |
| | | |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| | | |
| Appellee. | § | (TC # F-2010-2243-D) |

## OPINION

Robert Carver, proceeding *pro se*, appeals his convictions of possession of methamphetamine (Count I) and possession of GHB (Count II). A jury found Appellant guilty of each count and assessed his punishment at imprisonment for a term of ten years on Count I and twenty years on Count II. We affirm.

### FACTUAL SUMMARY

Angie Kinser first met Appellant in 2008 or 2009 while she was working at a bar in Frisco, Texas. In early 2010, Kinser was in Dallas and ran into Appellant. They spoke for a while and exchanged phone numbers. Kinser was unemployed and did not have a place to live. Appellant offered Kinser a place to stay and said he might be able to help her find employment. A couple of weeks later, Kinser went out with Appellant and she moved into his home in Lewisville. Within a short period of time, they went to Las Vegas and got married. Both Appellant and Kinser frequently used alcohol and drugs, including methamphetamine and GHB.

On June 16, 2010, one of Kinser's friends, Kerri Kincaid, was visiting at Appellant's house. All of them were drinking and using methamphetamine and GHB. Appellant went into the bedroom, but Kinser and Kincaid continued to "party." Appellant became upset when Kinser did not join him in the bedroom, but she stayed in another room with Kincaid. Kinser told Kincaid that she wanted to leave Appellant and she suspected he was hiding something on his work computer. Kinser went into the bedroom to retrieve the laptop but Appellant, who was pretending to be asleep, began yelling at her and asking why she had his computer. Kincaid attempted to calm Appellant while Kinser took a shower. After Kinser got out of the shower, she began gathering up some of her belongings to leave. When Appellant realized what Kinser was doing, he became extremely upset and chased her out of the house with a knife and a stun gun while threatening to kill her. Appellant eventually grabbed Kinser and dragged her back into the house while telling Kinser that she was not going anywhere. When Appellant learned that Kincaid had called 911, he became frantic and went into the kitchen. Kinser could hear him doing something in the kitchen. Police officers soon arrived at the residence and separated Appellant, Kinser, and Kincaid. The officers also found methamphetamine in the kitchen sink and bottles of GHB[1] inside of a small refrigerator in the master bedroom. Appellant was arrested for aggravated assault and possession of methamphetamine[2] and GHB. Kinser was also charged with possession of the methamphetamine found in the house.[3]

---

[1] GHB is the abbreviation of gamma-hydroxybutyrate or gamma-hydroxybutyric acid. GHB is included in Penalty Group 1. TEX.HEALTH & SAFETY CODE ANN. § 481.102(9)(West 2010).

[2] Methamphetamine is in Penalty Group 1. TEX.HEALTH & SAFETY CODE ANN. § 481.102(6).

[3] Kinser entered a plea of guilty and was sentenced to imprisonment for two years.

An emergency protective order was issued on June 17, 2010 to protect Kinser from Appellant. Appellant signed the protective order on that same date and acknowledged he had received a copy of the order at the magistrate's hearing. The protective order expressly prohibited Appellant from committing family violence against Kinser. Unaware that Appellant had bonded out and was at home, Kinser went to Appellant's house on June 20, 2010 to feed their pets. Appellant became angry with Kinser and locked her in the bedroom. She eventually convinced him to let her leave by telling him that the police were looking for her to give her a copy of the protective order.

Kinser met Kincaid at the police station and she reported what Appellant had done. Police officers went with Kinser to the house so she could get her belongings and leave. Kinser waited outside while the officers walked through the house. After the officers assured Kinser Appellant was not home, Kinser went inside and the officers left. Kinser was getting some of her clothes from the dryer in the garage when she turned around and saw Appellant. Appellant struck her face with his fist and she fell onto her back. Appellant picked up a shovel and began trying to jab her with it. Kinser, who was still on the floor, blocked the blows with the shovel as best she could and she pleaded with Appellant to stop. Rather than stopping the assault, Appellant picked up an ax and held it in his hand above Kinser. Kinser kicked him in the abdomen as hard as she could and Appellant fell backwards. She ran into the house and deadbolted the door to the garage before running out of the house. Kinser ran to a neighbor's house but the neighbor refused to help and closed the door. Another neighbor, Peggy Romo, saw Appellant chasing Kinser while she was running as fast as she could and screaming, "He's going

- 3 -

to kill me." Romo called 911 and reported what she had seen. When the police arrived, Appellant was in the house and refused to come outside. He appeared extremely angry and was chopping at the back door of the house with the axe. During this tirade, Appellant directed profanity at Kinser and one of the officers testified that Appellant wanted to "get ahold of her." After several hours, Appellant exited the house and was taken into custody.

A grand jury indicted Appellant for possession of methamphetamine and GHB alleged to have occurred on June 16, 2010 (trial court cause number F-2010-2243-D and appellate cause number 08-12-00300-CR), violation of a protective order alleged to have occurred on June 20, 2010 (trial court cause number F-2010-1716-D and appellate cause number 08-12-00299-CR), and aggravated assault with a deadly weapon alleged to have occurred on June 20, 2010 (trial court cause number F-2010-1715-D and appellate cause number 08-12-00298-CR). The cases were tried together and a jury found Appellant guilty as charged by the indictment in each case.

## APPELLANT'S BRIEF

Appellant was initially represented by appointed counsel on appeal, but he filed a motion to represent himself after his attorney filed the brief on his behalf. The trial court conducted a hearing and warned Appellant of the dangers and disadvantages of self-representation but Appellant persisted in his desire to proceed without counsel. Accordingly, we granted Appellant's motion and struck the brief filed by counsel.

Appellant has three appeals pending before the Court, cause numbers 08-14-00298-CR, 08-14-00299-CR, and 08-14-00300-CR. He filed a single handwritten brief in these appeals and he raises ten issues, some of which do not pertain to the instant appeal. Rather than requiring

- 4 -

Appellant to rebrief, we will simply not address the issues which are inapplicable to this appeal. In order to avoid confusion for the parties, we will use the number assigned to each issue in the brief rather than renumbering the issues.

## ACCOMPLICE WITNESS INSTRUCTION

In Issue Four, Appellant argues that the trial court erred by failing to include a jury instruction on the accomplice witness rule. Article 38.14 provides that: "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX.CODE.CRIM.PROC.ANN. art. 38.14 (West 2005). If the evidence clearly shows that an accomplice witness is an accomplice as a matter of law, the trial court must provide the accomplice-witness jury instruction. *Cocke v. State*, 201 S.W.3d 744, 748 (Tex.Crim.App. 2006). The State concedes that Kinser was an accomplice as a matter of law and the court's charge did not include the accomplice witness instruction. It argues, however, that the error did not result in egregious harm.

As observed by the State, we must examine the record for egregious harm because Appellant did not object to the omission of the accomplice witness instruction. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex.Crim.App. 1984)(op. on reh'g). Egregious harm is a difficult standard to prove. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex.Crim.App. 2011); *Hutch v. State*, 922 S.W.2d 166, 172 (Tex.Crim.App. 1996). In determining whether Appellant suffered egregious harm, we review "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other

- 5 -

relevant information revealed by the record of the trial as a whole." *Taylor*, 332 S.W.3d at 489, *quoting Almanza*, 686 S.W.2d at 171. Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive. *Taylor*, 332 S.W.3d at 490; *Almanza*, 686 S.W.2d at 172. Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Herron v. State*, 86 S.W.3d 621, 632 (Tex.Crim.App. 2002), *quoting Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App. 1991); *Jones v. State*, 195 S.W.3d 279, 290 (Tex.App.--Fort Worth 2006, no pet.). This analysis requires us to assess the strength of non-accomplice evidence by examining its reliability or believability and the degree to which it connects the defendant to the crime. *Herron*, 86 S.W.3d at 632.

On June 16, 2010, Police Officers Bryan Shelton and Paul Bennett of the Lewisville Police Department were dispatched to a residence in Lewisville to investigate a disturbance call. The dispatcher advised Shelton and the other responding officers that a man with a taser was chasing a woman. Shelton knocked on the door to the home and Kinser answered the door. The officers got Kinser out of the house before proceeding further. Shelton saw a man he subsequently identified as Robert Carver step out of the kitchen area and into a hallway. Shelton described Appellant as "built" and he appeared as though he spent a lot of time lifting weights. The officers handcuffed Appellant and made him sit in the dining room while they investigated

- 6 -

the case. Shelton walked into the kitchen with the intent of going out in the alley where the witness, Kincaid, was located, but he saw a woman's purse on the floor and what appeared to be clear chunks of crystal methamphetamine in the sink. A small baggie with a crystal methamphetamine-like substance was on the floor next to the purse. The substances were subsequently analyzed and determined to be methamphetamine. Officers Bennett and Detective Duk Lee also saw the methamphetamine on the floor and in the sink. It appeared to Detective Lee that someone had been attempting to dispose of the drugs in the kitchen sink.

Neither Shelton nor Bennett could make an in-court identification of Appellant, but Detective Lee and Officer Eddie Barrett positively identified Appellant as the same person arrested at the scene. Lee also testified that Appellant owned the home. Lee recalled that Appellant looked like a bodybuilder and appeared to be in good shape. In addition to the methamphetamine found in the sink and on the kitchen floor, the officers found GHB in a small refrigerator in the master bedroom as well as steroids in the master bedroom closet. According to Detective Lee and Officer Barrett, GHB is used by bodybuilders to increase human growth hormone.

Appellant admitted to Detective Lee that he had knowledge of the methamphetamine in the sink and his fingerprints might be on the baggies, but he told Barrett that the drugs found in his home belonged to Kinser. Officer Barrett spoke to Appellant about becoming a confidential informant and Appellant provided information regarding methamphetamines even though he was not used as a confidential informant due to department policy. Shortly after Appellant's arrest on June 16, 2010, Appellant told Officer Jason Williams that he had used Effexor and Klonopin and

- 7 -

he "may have washed it down with some GHB."

The testimony of the non-accomplice witnesses is reliable and connected Appellant to possession of the methamphetamine and GHB independent of Kinser's testimony. We conclude that the omission of the accomplice witness instruction did not result in egregious harm to Appellant. Issue Four is overruled.

## HEARSAY

In Issue Five, Appellant contends that the trial court abused its discretion by admitting the hearsay statements Kerri Kincaid made to Officer Shelton under the excited utterance exception.

### Standard of Review and Relevant Law

A trial court has broad discretion in determining the admissibility of evidence. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex.Crim.App. 1991). Consequently, an appellate court reviews a trial court's decision admitting or excluding evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010). The trial court's ruling will be overturned only if it is so clearly wrong that the ruling lies outside the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex.Crim.App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on reh'g).

Hearsay is not admissible except as provided by statute or the Texas Rules of Evidence. TEX.R.EVID. 802. An excited utterance is one exception to the general prohibition against the admission of hearsay. TEX.R.EVID. 803(2). Rule 803(2) provides that an excited utterance is: "A statement relating to a startling event or condition made while the declarant was under the

- 8 -

stress of excitement caused by the event or condition." TEX.R.EVID. 803(2). To qualify as an excited utterance, the statement must be a product of a startling occurrence; the declarant must have been dominated by the emotion, excitement, fear, or pain of the occurrence; and the statement must be related to the circumstances of the startling occurrence. *Couchman v. State*, 3 S.W.3d 155, 159 (Tex.App.--Fort Worth 1999, pet. ref'd)(*citing McFarland v. State*, 845 S.W.2d 824, 846 (Tex.Crim.App. 1992)).

In determining whether a hearsay statement is admissible as an excited utterance, the court may consider the time elapsed and whether the statement was in response to a question, but these two factors are not dispositive. *Zuliani v. State*, 97 S.W.3d 589, 595-96 (Tex.Crim.App. 2003). The critical determination is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event" or condition at the time of the statement. *Id.*, 97 S.W.3d at 596; *Salazar v. State*, 38 S.W.3d 141, 154 (Tex.Crim.App. 2001). The reviewing court must determine whether the statement was made "under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *Zuliani*, 97 S.W.3d at 595, *quoting Fowler v. State*, 379 S.W.2d 345, 347 (Tex.Crim.App. 1964).

*Analysis*

Kincaid was the person who called 911 on June 16, 2010. Officer Shelton arrived at the scene in "well less than 10 minutes" after he received the dispatch and he spoke to Kincaid, who appeared "frazzled," approximately ten minutes after he arrived at the scene. He asked Kincaid what had happened and what she had seen. When Shelton began to state what Kincaid told him, Appellant made a hearsay objection and the trial court sustained it. The State responded that

- 9 -

Kincaid's statements to Shelton were admissible under the excited utterance exception to the hearsay rule. Appellant took the witness on *voir dire* and Shelton testified that Kincaid was excited to the point that she was not communicating with him in a normal fashion and was speaking fast. The trial court overruled Appellant's hearsay objection. Shelton then testified that the "motivating event" which caused Kincaid to call the police was that Appellant became upset with Kinser and he chased her around a car with a taser.

Kincaid's statements to Officer Shelton obviously related to the startling event which precipitated her phone call to the police, that is, seeing Appellant chase Kinser with a butcher knife and what Kincaid described as a taser. The record reflects that Kincaid made her statements to Officer Shelton within minutes after the startling event. The fact that Kincaid made her statements to Officer Shelton in response to his general questions asking what had happened and what she had she seen does not make the testimony inadmissible. *See Tejeda v. State*, 905 S.W.2d 313, 316 (Tex.App.--San Antonio 1995, pet. ref'd). Shelton's testimony that Kincaid was excited, not communicating normally, and talking fast provides evidence from which the trial court could have concluded that Kincaid was still dominated by the excitement of the events she had just witnessed. We conclude that the trial court did not abuse its discretion by finding that Kincaid's statements resulted from impulse rather than reason and reflection. *See Amador v. State*, 376 S.W.3d 339, 344 (Tex.App.--Houston [14th Dist.] 2012, pet. ref'd)(holding that robbery victim's statements to police officer, identifying defendant, were admissible under excited utterance exception to hearsay rule, where statements were made shortly after victim was robbed at gunpoint, and other witnesses described victim as being frightened and in an excited

- 10 -

state).

*Any Error is Harmless*

Even if the hearsay statement is not properly admissible as an excited utterance, its erroneous admission is harmless because the same evidence was admitted through other witnesses. The erroneous admission of evidence is non-constitutional error. *Garcia v. State*, 126 S.W.3d 921, 927 (Tex.Crim.App. 2004). An appellate court must disregard the error unless it affected an appellant's substantial rights. TEX.R.APP.P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble v. State*, 330 S.W.3d 253, 280 (Tex.Crim.App. 2010); *Garcia*, 126 S.W.3d at 927. An error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998).

Kinser testified that Appellant chased her with a knife and taser and she yelled for Kincaid to call 911. Further, Officer Shelton testified that Kinser told him that Appellant chased her with a taser and her statements to him were consistent with the information he received from dispatch. Given that the challenged hearsay statement is cumulative of other evidence admitted at trial, we conclude that any error in the admission of the hearsay was harmless. *See Amador*, 376 S.W.3d at 344-45 (holding that any error in admission of robbery victim's statements to police officer, identifying defendant, under excited utterance exception to hearsay rule was harmless error, where similar statements were testified to by three other witnesses). Issue Five is overruled.

- 11 -

## EXCLUSION OF EVIDENCE

In Issue Six, Appellant asserts that the trial court abused its discretion by excluding evidence related to the complainant's conviction of theft. During direct examination, the prosecutor elicited testimony from Angie Kinser regarding her prior convictions, including a theft of property over $50 but less than $500. She explained during cross-examination that the theft conviction involved the shoplifting of clothing. Appellant questioned her regarding the details of the offense and Kinser stated she had stolen clothing for herself and her daughter. When she did not remember taking an item of men's clothing, Appellant offered into evidence the complaint and information (Defense Exhibit 1) and the probable cause affidavit prepared by the arresting police officer (Defense Exhibit 2), but the State objected that it was improper impeachment because she had admitted to the prior conviction. The trial court sustained the objection.

Rule of Evidence 609 permits the impeachment of a witness with a prior felony conviction or a crime involving moral turpitude provided the trial court determines that the probative value of the evidence outweighs its prejudicial effect. TEX.R.EVID. 609(a). Theft is a crime of moral turpitude. *LaHood v. State*, 171 S.W.3d 613, 620 (Tex.App.-Houston [14th Dist.] 2005, pet. ref d); *Ludwig v. State*, 969 S.W.2d 22, 28 (Tex.App.--Fort Worth 1998, pet. ref'd). The evidence regarding the prior conviction may be elicited from the witness or established by public record, but the details of the offense are inadmissible. TEX.R.EVID. 609(a); *Mays v. State*, 726 S.W.2d 937, 953 (Tex.Crim.App. 1986); *Andrews v. State*, 429 S.W.3d 849, 858 (Tex.App.-- Texarkana 2014, pet. ref'd). Given that Kinser admitted the prior conviction on direct

- 12 -

examination, the trial court did not abuse its discretion by excluding the complaint and information (Defense Exhibit 1). Further, Appellant was not entitled to inquire into or introduce evidence regarding the details of the theft conviction. Thus, the trial court did not abuse its discretion by excluding the probable cause affidavit (Defense Exhibit 2). *See Andrews*, 429 S.W.3d at 858 (holding that defendant was permitted to establish that witness had been convicted of a felony or crime of moral turpitude, but he could not inquire as to the circumstances surrounding the offense). Issue Six is overruled.

## INCOMPLETE RECORD ON APPEAL

In Issue Seven, Appellant argues that his right to an adequate record on appeal has been violated because a portion of the reporter's record is missing, certain exhibits have not been included in the reporter's record, and some documents have not been included in the clerk's record.

### *Missing Portion of the Reporter's Record*

An appellant is entitled to a new trial under the following circumstances: (1) if the appellant has timely requested a reporter's record; (2) if, without the appellant's fault, a significant portion of the reporter's record has been lost or destroyed; (3) if the lost or destroyed portion of the reporter's record is necessary to the appeal's resolution; and (4) if the lost or destroyed portion of the reporter's record cannot be replaced by agreement of the parties. TEX.R.APP.P. 34.6(f). The rule's requirement that the appellant show that the missing portion of the record is necessary to resolution of the appeal is a harm analysis. *Routier v. State*, 112 S.W.3d 554, 571 (Tex.Crim.App. 2003); *Issac v. State*, 989 S.W.2d 754, 757 (Tex.Crim.App.

- 13 -

1999).

The official court reporter, Molly Bowers, filed the reporter's record and notified the Court that a portion of the record had not been prepared because a substitute court reporter had advised her that he had lost his notes due to a computer malfunction. We ordered the trial court to conduct a hearing to address whether a portion of the reporter's record had been lost or destroyed. *See* TEX.R.APP.P. 34.6(f). It is undisputed that Appellant timely requested a reporter's record. Consequently, our order required the trial court to determine whether a significant portion of the record was lost or destroyed, whether the missing portion of the record is necessary to the appeal, and whether the record can be replaced by agreement of the parties. At that hearing, the State and Appellant, through his counsel, agreed that the missing portions of the reporter's record were the punishment charge conference, closing arguments during punishment, and the return of the jury's punishment verdict. After a discussion on the record between the parties and the trial judge regarding what had transpired at the charge conference, closing arguments, and the return of the punishment verdict, the trial court determined that the missing portion of the reporter's record is not a significant portion. Both Appellant and the State agreed with this finding. Additionally, the attorney appointed to represent Appellant on appeal advised the trial court that he had reviewed the entire reporter's record and he did not believe that the missing portion of the reporter's record is necessary to the appeal. The trial court entered a written finding that the missing portion of the record is not significant to resolution of the appeal. Finally, the trial court determined that the missing portion of the record could not be replaced by agreement of the parties.

- 14 -

Citing *Kirtley v. State*, 56 S.W.3d 48 (Tex.Crim.App. 2001), Appellant maintains that the missing portion of the reporter's record is necessary to his appeal because he is unable to determine whether his trial attorney is ineffective without the record. In *Kirley*, the appellant was placed on deferred adjudication and the State later moved to adjudicate guilt. *Kirtley*, 56 S.W.3d at 49-50. An appeal was taken but the record of the revocation hearing was lost. *Id.* The appellant claimed that the lost record was necessary to resolution of his complaint that trial counsel was ineffective during the punishment portion of the revocation proceeding. *Kirtley*, 56 S.W.3d at 49-50. The Court of Criminal Appeals concluded that the record was necessary to resolution of the appellant's ineffective assistance of counsel claim.

*Kirtley* is distinguishable because the entire record was lost. In our case, the appellate record includes all of the punishment phase of the trial except for the charge conference, closing arguments, and the return of the jury's punishment verdict. We do not read *Kirtley* as standing for the proposition that a lost portion of a record is always necessary to resolution of an appeal if the appellant claims ineffective assistance of counsel. Each case must be considered on its own facts and a determination must be made whether the missing portion of the record is a significant portion of the reporter's record and whether it is necessary to resolution of the issues presented on appeal.

Appellant contends that the missing portion of the record may demonstrate ineffective assistance of counsel at trial based on two claims of deficient performance: (1) counsel failed to request an accomplice witness instruction; and (2) counsel failed to object to the admission of extraneous offenses and Appellant's prior convictions. Appellant's brief does not include an

- 15 -

issue raising an ineffective assistance of counsel claim. Thus, Appellant's assertion that the missing portion of the record might show ineffective assistance of counsel is nothing more than speculation. The Court of Criminal Appeals has held that Rule 34.6(f)'s requirement that the appellant show the missing portion of the record is necessary to his appeal cannot be based on speculation as to what might have been shown in the record. *See Routier*, 112 S.W.3d at 571 (holding that an appellant's suggestion that jury instructions may have been erroneous, without more, does not make that portion of the record necessary to the appeal). We conclude that Appellant has failed to show he is entitled to a new trial under Rule 34.6(f) due to the loss of a portion of the reporter's record.

*Exhibits Not Included in the Reporter's Record*

Appellant next claims that certain exhibits have not been included in the reporter's record. Prior to filing his brief, Appellant filed a motion to supplement the record with the following items: (1) Lewisville Police Department Lab Request Form, dated 6-17-10; (2) Lewisville Police Department Property/Evidence Report, dated 6-16-10 (report no. 10-06943); (3) memo from the Lewisville Police Department addressing the firing of evidence technicians for misappropriation of evidence; and (4) all of the crime scene photographs taking on June 16, 2010 including those not admitted into evidence at trial. In an order entered on September 11, 2013, we denied Appellant's motion to supplement the record because the crime scene photographs which were admitted into evidence and a lab report are included in the exhibits volume and the remaining items were not admitted into evidence. The appellate court, the trial court, or a party may request that the record be supplemented with items which were part of the

trial record but omitted from the appellate record. *See* TEX.R.APP.P. 34.6(d). This rule does not permit a party to supplement the record with evidence that was not offered or admitted during the proceedings in the trial court.

Appellant additionally argues that the reporter's record should include a transcription of the grand jury testimony. In one of his motions, Appellant asked the Court to order that the record be supplemented to include the transcript of the grand jury testimony. As we noted in our order entered on September 11, 2013, the reporter's record does not reflect that the grand jury testimony was admitted into evidence. The reporter's record cannot be supplemented with matters which were not part of the record in the trial court. *See* TEX.R.APP.P. 34.6(d).

*Items Excluded from the Clerk's Record*

Appellant also complains that the following items were omitted from the clerk's record: (1) a memo from the Lewisville Police Department addressing the firing of evidence technicians for misappropriation of evidence; (2) the police evidence report listing the items tagged and seized at the scene; (3) the jury panel lists, (4) the strike list of the State and defense; (5) juror information forms; (6) the jury's verdict forms; (7) objections to the charge; (8) and special requested jury instructions and rulings by the trial court. Rule 34.5(c) provides that if a relevant item has been omitted from the clerk's record, the trial court, the appellate court, or a party may by letter direct the trial court clerk to prepare and file a supplemental clerk's record containing the omitted item. TEX.R.APP.P. 34.5(c)(1).

With respect to the first two items, Appellant asserts that he was provided this information as part of his discovery requests. Based on Appellant's statements, these two items

- 17 -

were provided to Appellant by the State, and therefore, the items appear to be part of the State's case file. There is nothing, however, to indicate that the first two items were ever included in the records of the trial court clerk. Accordingly, we do not find that these items have been omitted from the clerk's record. Further, Appellant has not shown how the items are relevant to any issue he has presented on appeal.

A supplemental clerk's record containing the jury panel list and the strike lists was filed after Appellant filed his brief. We notified Appellant that the supplemental record had been filed and gave him an opportunity to file a supplemental brief, but none was filed. In our order dated September 25, 2013, we denied Appellant's request to supplement the record with the juror information forms because he failed to make the required showing of good cause. *See* TEX.CODE CRIM.PROC.ANN. art. 35.29 (West Supp. 2014). Regarding Appellant's sixth request, the clerk's record includes the jury verdicts for both guilt-innocence and punishment as required by TEX.R.APP.P. 34.5(a)(4). The record does not reflect that either party made any written objections to the charge or that there were any special requested instructions. We conclude that the clerk's record has been properly supplemented with the relevant items. Issue Seven is overruled.

## IMPROPER JURY ARGUMENT

In Issue Eight, Appellant contends that the prosecutor made several comments during the opening statement and closing argument which were not supported by the evidence. The State responds that Appellant failed to preserve error with respect to any of the prosecutor's arguments. We agree.

- 18 -

*Preservation of Error*

In order to preserve error regarding improper jury argument, a defendant must (1) make a timely and specific objection; (2) request an instruction that the jury disregard the statement if the objection is sustained; and (3) move for a mistrial if the instruction is insufficient to remove the prejudice resulting from the argument. TEX.R.APP.P. 33.1(a); *Cruz v. State*, 225 S.W.3d 546, 548 (Tex.Crim.App. 2007). We have reviewed the record related to each comment and argument identified in Appellant's brief and have determined that Appellant objected to only two of them. Appellant's complaints about the remaining comments and arguments are waived.

During closing argument the prosecutor invited the jury to consider where the methamphetamine was found, and stated: "And I take you back to the officer's testimony. When they arrived and they looked down the hallway -- and he tells you he can clearly see Robert Carver standing right next to that sink, right next to that sink." The trial court sustained Appellant's objection that the prosecutor had misstated the evidence and the court instructed the jury to "remember the evidence as you received it." Appellant did not move for a mistrial. Thus, Appellant failed to pursue his objection to an adverse ruling and he received all the relief he requested. *See Young v. State*, 137 S.W.3d 65, 69 (Tex.Crim.App. 2004). Nothing is presented for our review.

The prosecutor also discussed the evidence related to Appellant going into the house after the officers cleared it and left on June 20, 2010. When he told the jury that the house had a boarded-up window, Appellant objected that it was not in evidence. The trial court did not expressly rule on the objection but it instructed the jury to "remember the evidence as they

- 19 -

received it." Appellant did not move for a mistrial. As was the case with the prior argument, the trial court granted Appellant all of the relief he requested and Appellant did not pursue his objection to an adverse ruling. *See Young*, 137 S.W.3d at 69. Issue Eight is overruled.

## EXTRANEOUS OFFENSES

In Issue Nine, Appellant argues that the trial court erred by admitting evidence of his prior convictions. Appellant's brief does not provide record references demonstrating where the claimed error occurred, but we understand Appellant to complain about the admission of his prior convictions during the punishment phase. Evidence may be admitted during the punishment phase on any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant. TEX.CODE CRIM.PROC.ANN. art. 37.07 § (a)(1) (West Supp. 2014). The record demonstrates that Appellant did not object to the admission of the evidence showing his prior convictions. Consequently, Appellant failed to preserve any error related to the admission of this evidence. *See* TEX.R.APP.P. 33.1. Issue Nine is overruled.

## RIGHT TO COUNSEL

In his final issue, Appellant asserts that he was denied legal representation during his post-indictment arraignment in cause numbers F-2010-2243-D and F-2010-1719-D. The record does not support Appellant's claim that his right to counsel was violated.

The Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense. U.S. CONST. amend. VI. The Sixth Amendment right to counsel attaches once the "adversary judicial process has been initiated," and it guarantees "a defendant the right to have counsel present at all 'critical' stages of the

- 20 -

criminal proceedings." *Pecina v. State*, 361 S.W.3d 68, 77 (Tex.Crim.App. 2012), *quoting Montejo v. Louisiana*, 556 U.S. 778, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009). Arraignment has been held to be a "critical stage" in a criminal case. *See Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).

The record reflects that Appellant was arrested on June 16, 2010 for possession of a controlled substance (cause number F-2010-2243-D) and he bonded out on that charge the following day. Following Appellant's arrest on June 20, 2010 for aggravated assault (cause number F-2010-1715-D) and violation of a protective order (cause number F-2010-1716-D), the surety filed a motion for discharge of liability. Appellant made a $10,000 bond on the possession case on June 26, 2010, but the surety surrendered Appellant on July 15, 2010. Appellant's attorney, Stephen Wohr, filed a motion on July 23, 2010 to reinstate Appellant's bond in each of these cases. A Denton County grand jury returned indictments against Appellant on July 29, 2010 for the aggravated assault and violation of a protective order offenses, and according to Appellant, he was arraigned on September 2, 2010. On September 23, 2010, Appellant was indicted in cause number F-2010-2243-D (appeal cause number 08-14-00300-CR).[4] He was served with a copy of the indictment on September 30, 2010. *See* TEX.CODE CRIM.PROC.ANN. arts. 25.01, 25.02 (West 2009)(requiring clerk in felony cases to prepare certified copy of indictment and deliver it to sheriff for service on the defendant). The record does not reflect when Appellant was arraigned in this case or if his attorney waived arraignment[5],

---

[4] Appellant was also indicted in cause number F-2010-2019-D, but the jury acquitted Appellant of that charge. Consequently, we will restrict our review of this issue to cause number F-2010-2243-D.

[5] *See* TEX.CODE CRIM.PROC.ANN. art. 26.011 (West 2009)(authorizing the waiver of arraignment by defendant's

but he was represented by counsel from July 23, 2010 through November 17, 2011 when the trial court granted counsel's motion to withdraw. The trial court granted Appellant's application for appointment of counsel in the possession case on February 14, 2012.

While arraignment is a critical stage, the record shows that Appellant was represented by counsel both before and after indictment in this case. The record does not support Appellant's claim that he was denied his right to counsel during this critical stage. Accordingly, we overrule Issue Ten. Having overruled each issue presented on appeal, we affirm the judgment of the trial court.

January 28, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

(Do Not Publish)

---

attorney).

- 22 -